## MAUST v. WARDEN OF THE UNITED STATES PENITENTIARY, AT LEAVENWORTH, KAN.

(Circuit Court of Appeals, Eighth Circuit. September 11, 1922.)

No. 5974.

1. Indians ⬤⇒38(2)—Federal court held to have jurisdiction of offense committed in Indian country within territory.

Under Oklahoma Enabling Act, §§ 13, 14, a federal court in the Western district of the state *held* to have jurisdiction of a crime committed in Indian country, within such district, prior to admission of the state.

2. Habeas corpus ⬤⇒27—Want of jurisdiction of trial court not shown.

A white man, convicted in a federal court sitting within a state, of murder committed on an Indian reservation within what was then a territory, *held* not entitled to discharge on habeas corpus, on the ground of want of jurisdiction of the court, because the indictment did not disclose whether the person murdered was a white man or an Indian.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Habeas corpus by Charles Maust against the Warden of the United States Penitentiary at Leavenworth, Kan. Writ denied, and petitioner appeals. Affirmed.

Arthur M. Jackson, of Winfield, Kan., for appellant.

Al. F. Williams, U. S. Atty., of Topeka, Kan., and W. W. Harvey, Asst. U. S. Atty., of Ashland, Kan., for appellee.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEWIS, Circuit Judge.  This is an appeal from an order denying application for discharge of appellant on writ of habeas corpus.  The record shows that he was tried and convicted in the United States District Court for the Western District of Oklahoma of the crime of murder, and sentenced therefor on January 29, 1912, to imprisonment in the penitentiary at Leavenworth during his natural life.  The indictment was found and returned by the grand jury on the 9th day of that month.  It is attached to his petition for the writ, and from it it appears that the crime was committed on March 18, 1901, in Indian country, to wit, Otoe and Missouri Indian Reservation, within what was formerly the Territory of Oklahoma, now Noble County in that State within said Western District, that appellant is a white man, and that he murdered one Alvin Bateman; but it does not appear from the indictment that Bateman was not an Indian.  Oklahoma was admitted as a State in 1907, and Noble County became a county by that name on State organization, and at the time the indictment was found it was one of the counties in the Twelfth Judicial District of the State.  The district courts of that State are given original jurisdiction by the Constitution over all criminal cases.

[1] The one contention here is that the court that tried appellant did not have, but the State district court did have, jurisdiction.  Sections 16, 17 and 20 of the Enabling Act (34 Stat. 267, 1286), which were accepted by the schedule to the State constitution for the new State, are relied upon, from which it appears that (section 16):

"Prosecutions for all crimes and offenses committed within the Territory of Oklahoma or in the Indian Territory, pending in the district courts of the Territory of Oklahoma or in the United States courts in the Indian Territory upon the admission of such Territories as a State, which, had they been committed within a State, would have been cognizable in the Federal courts, shall be transferred to and be proceeded with in the United States circuit or district court established by this Act for the district in which the offenses were committed, in the same manner and with the same effect as if they had been committed within a State."

And also (section 20):

"That all causes, proceedings, and matters, civil or criminal, pending in the district courts of Oklahoma Territory, or in the United States courts in the Indian Territory, at the time said Territories become a State, not transferred to the United States circuit or district courts in the State of Oklahoma, shall be proceeded with, held, and determined by the courts of said State, the successors of said district courts of the Territory of Oklahoma, and the United States courts in the Indian Territory."

Section 17 relates only to causes, civil or criminal, pending in the Supreme Court of the Territory of Oklahoma or in the United States Court of Appeals in the Indian Territory.  It is observed at once that these sections of the schedule do not answer the inquiry, because they only distribute causes and proceedings then *pending* in the temporary courts.  Other sections of the Act (13 and 14) which have been construed by the Supreme Court are, however, directly in point.  Pickett v. U. S., 216 U. S. 456, 30 Sup. Ct. 265, 54 L. Ed. 566, was on error to the circuit court of the United States for the Western District of Oklahoma.  Before the abolition of circuit courts Pickett, a negro, had been convicted of the murder of another negro within the limits

of the Osage Indian Reservation, committed on October 14, 1907, which was less than two months prior to the admission of the State of Oklahoma to the Union. The reservation was within the western district, and the indictment was found and trial had after statehood. Jurisdiction was challenged. The opinion points out "that the crime charged was committed within a 'place or district' at that time exclusively under the jurisdiction of the United States, being Indian country, not within any State," that by section 13 the state, when admitted, shall be divided into two judicial districts, that a district judge, clerk, and marshal for each shall be appointed, and that regular terms of both the district and circuit courts should be held. Section 14 of the Enabling Act is then quoted as follows:

"That all prosecutions for crimes or offenses hereafter committed in either of said judicial districts as hereby constituted shall be cognizable within the district in which committed, and all prosecutions for crimes or offenses committed before the passage of this Act in which indictments have not yet been found or proceedings instituted shall be cognizable within the judicial district as hereby constituted in which such crimes or offenses were committed."

And it is said:

"It was, therefore, altogether competent for Congress to provide, as it did in the 14th section of this Enabling Act, for the transfer of jurisdiction in respect of all crimes against the United States—for the act must be read as applying to crimes under the general criminal law of the United States—to the federal courts provided by the same act. If this could not be done, the change from a territorial condition to that of a state would operate as an automatic amnesty for crimes committed against the general law of the United States within districts exclusively under its jurisdiction, and not within the jurisdiction of any state, for the court of the state could not be empowered to prosecute crimes against the laws of another sovereignty."

Jurisdiction was sustained and the judgment affirmed. Counsel rely upon Southern Surety Co. v. Oklahoma, 241 U. S. 582, 36 Sup. Ct. 692, 60 L. Ed. 1187, as modifying and in effect overruling the Pickett Case; but we do not so understand the opinion in that case. The matter and cause there under consideration was pending in a temporary court of the Indian territory at the time the state was admitted, and it was in relation to an offense which would not have been cognizable in a court of the United States had it been committed within a state. It was an action on a forfeited bail bond given by one held under a charge of adultery to await the action of the grand jury. Special reliance is placed upon what is said in the opinion to the effect that section 14 of the Enabling Act "was intended to mark the line separating the jurisdiction of the federal courts in the two districts, as between themselves, and not the line separating their jurisdiction from that of the state courts"; but it must be noted that that comment is prefaced by the statement, "It is enough for present purposes to say." The Pickett Case is not referred to, and we cannot hold that it was thereby overruled.

[2] There is another reason why the action of the district court in refusing to discharge appellant must be sustained. On application for the writ the only inquiry open for consideration was that of jurisdiction of the trial court. Collins and Marshall v. McDonald, 258 U. S. ——, 42 Sup. Ct. 326, 66 L. Ed. —— (decided April 10, 1922). The

petition for the writ charged that the court was without jurisdiction. There can be no doubt that a white man may be indicted, prosecuted, tried, convicted and punished in a federal court sitting within a state, for the murder of an Indian committed within Indian country. Donnelly v. U. S., 228 U. S. 243, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710; U. S. v. Pelican, 232 U. S. 442, 34 Sup. Ct. 396, 58 L. Ed. 676. It may be conceded that an indictment charging such an offense against a white man might be successfully challenged in limine, if it did not appear that the one murdered was an Indian; but if it be not so charged and the indictment be not challenged, and it appear on the trial that the person murdered was an Indian, the United States court sitting within a state would have jurisdiction of the offense. It does not appear from this indictment that Bateman was not an Indian. But in either event, the question whether the trial court had or did not have jurisdiction on that account was one for its inquiry and determination. It had authority to hear and pass upon that question of fact, and its decision could have been reviewed by writ of error, but it cannot be attacked collaterally. Toy Toy v. Hopkins, 212 U. S. 542, 29 Sup. Ct. 416, 53 L. Ed. 644. This court, in Foltz v. St. L. & S. F. Ry. Co., 60 Fed. 316, 8 C. C. A. 635, in a clear and forcefully reasoned opinion, said:

"Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud."

See, also, Board of Commissioners v. Platt, 79 Fed. 567, 25 C. C. A. 87; Phebus v. Search (C. C. A.) 264 Fed. 407.

For these reasons the order denying discharge of appellant from imprisonment must be and it is affirmed.